IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHADEYA HEPPARD**<br><br>    v.<br><br>**EDSI SOLUTIONS** | **CIVIL ACTION**<br><br>**NO. 13-6124** |

### MEMORANDUM OF LAW RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                                           Dec. 19, 2014

**I.      Introduction**

This is an employment discrimination case. Plaintiff Shadeya Heppard, who is an African American woman, has alleged the following claims against her former employer, Defendant EDSI Solutions ("EDSI"):

1. Intentional Misrepresentation (Count I);

2. Intentional Nondisclosure (Count II);

3. Negligent Misrepresentation (Count III);

4. Discrimination under the Pennsylvania Human Relations Act ("PHRA") (Count IV); and

5. Breach of Contract (Count V).[1]

The Court has diversity jurisdiction over this Pennsylvania state-law case, which EDSI removed from the Philadelphia Court of Common Pleas, under 28 U.S.C. § 1332. ECF 1. EDSI now moves for summary judgment.

---

[1] At oral argument, Heppard's counsel informed the Court that she was no longer pursuing Counts III and V for negligent misrepresentation and breach of contract. The Court will therefore dismiss these claims.

1

## II.	Summary of Undisputed Facts

The parties do not dispute that Heppard worked at a Philadelphia center operated by EDSI called "West EARN," where she was promoted from "Data Entry Clerk" to "Quality Control Coordinator" (or "QCC") in October 2009.  The parties also do not dispute that at the time of Heppard's promotion, she and EDSI discussed the possibility of a retroactive salary increase, although the parties' interpretations of these discussions differ.  The parties also do not dispute that Heppard's promotion resulted in a change in job responsibilities.

The parties agree that Heppard never received a retroactive raise.  Between the time of Heppard's promotion and her resignation in January 2011, the parties agree that EDSI management told her EDSI could not provide a salary increase in connection with her promotion due to financial difficulties at West EARN that necessitated a wage freeze.  Neither party disputes that one white employee, Meredith Lang, was promoted and received a retroactive salary increase during the time EDSI told Heppard a wage freeze was in effect, although the parties disagree about the significance of this fact.  The parties also agree that Heppard received an approximately $1,000 non-retroactive raise in December 2010 as part of a company-wide salary increase.

The parties further agree that West EARN was one of two centers EDSI operated in Philadelphia that provided education services to businesses and displaced workers under contracts with the Philadelphia Workforce Development Corporation ("PWDC") and the Commonwealth of Pennsylvania.  In 2010, the PWDC awarded the contract to operate the second center, "South EARN," to another company.  The parties do not dispute that rather than firing all South Earn employees, EDSI decided to transfer some South EARN employees to West EARN, and demoted or terminated staff from both centers.  It is not disputed that 21 out of the

24 of the terminated employees were black, although the parties again dispute the significance of this fact.

The parties do not dispute that as a result of the transfer of South EARN employees to West EARN, Heppard was demoted from the QCC position. She was replaced in this position by Matthew Eisenhart, a white employee transferred from South EARN. The parties also agree that Eisenhart's salary as QCC was $10,000 higher than Heppard's was in the same position, although they do not agree about the significance of Eisenhart's higher salary.

It is undisputed that beginning in the fall of 2010, Heppard was criticized for her handling of the West EARN "master database," although the parties disagree about the validity of these criticisms. The parties also agree that Heppard resigned from EDSI the day that the black director of West EARN, Clifford Smith, was demoted and replaced by Meredith Lang, his white assistant. Heppard contends that Smith's demotion was involuntary and racially motivated, thereby prompting Heppard to quit, but EDSI maintains that Smith's demotion was voluntary. Since her 2011 departure from EDSI, the parties agree that Heppard has turned down three job offers, although there is a dispute about whether those jobs entailed salaries or job duties substantially equivalent to her former position.

### III.     Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  *Id.* at 325.  After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule [ ] set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  *Anderson*, 477 U.S. at 255.

**IV.**     **Analysis**

    **A.**     **PHRA Discrimination**

Summary judgment of PHRA race discrimination claims is evaluated under the *McDonnell-Douglass* burden-shifting test.  *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999).  Heppard has established a *prima facie* case of discrimination regarding both EDSI's failure to provide a retroactive salary increase after her 2009 promotion and her subsequent demotion from the QCC position.  Although EDSI argues that Heppard has failed to establish a *prima facie* case with respect to salary because the white comparator she names, Meredith Lang, is not "similarly situated," pointing to an identical comparator is not necessary to establish a *prima facie* case of discrimination.  *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir.

2003); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 353 (3d Cir. 1999). Heppard has pointed to other "circumstances that could give rise to an inference of intentional discrimination," including evidence that two other black employees received no salary increases along with their promotions and mass terminations and demotions of black employees during the relevant time period. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

EDSI has asserted legitimate, nondiscriminatory reasons for each of its actions: 1) a wage freeze was in effect during the period Heppard was promoted, and 2) EDSI demoted Heppard in favor of Eisenhart during the consolidation of West EARN and South EARN based on performance ratings derived from a survey of the centers' employees. Heppard contends that EDSI's reasons were pretextual, whereas EDSI argues that Heppard has put forth no evidence that EDSI did not act for its stated reasons or that racial discrimination was more likely than not the cause of its actions. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

The burden falls on Heppard to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action," and she is not required to present additional evidence of discrimination beyond her *prima facie* case. *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013). At oral argument, the parties answered questions about the record evidence on pretext. Viewing this evidence in the light most favorable to Heppard, the Court believes a reasonable jury could disbelieve EDSI's stated reasons for failing to provide Heppard with a retroactive salary increase and demoting her from the QCC position. The Court has identified several genuine disputes of material fact:

- EDSI contends that a wage freeze was in effect due to the West EARN center's financial difficulties. Heppard has presented evidence—including deposition testimony by EDSI managers—that centers were profitable and funds were available to provide a salary increase to Heppard. EDSI also admits that it in fact increased the salary of one employee, Meredith Lang, during the wage freeze.

- Heppard has presented evidence of discrepancies between the final averaged employee rating scores used to make termination and demotion decisions and the underlying employee surveys, as well as evidence that the completed underlying surveys EDSI has produced are not authentic.

- EDSI's Regional Director, Rosemarie Falcone, states in an affidavit that she told the staff of both centers that the ratings they gave their fellow employees would be used to make termination decisions during the consolidation, but Heppard has testified that the predominantly black West EARN staff were not informed of the significance of the surveys.

The Court will therefore deny summary judgment on Heppard's PHRA discrimination claims.

### B. PHRA Constructive Discharge

Constructive discharge occurs where an employer "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996); *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984). This is an objective inquiry that takes into consideration whether the employee was "demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or

given unsatisfactory job evaluations." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013) (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010)). Heppard has presented evidence of several events that, taken together and with all inferences drawn in Heppard's favor, could lead a reasonable person to resign:

- EDSI demoted Heppard during the consolidation, which disproportionately affected black employees.

- After the mass demotions, a white employee reported to management that Heppard had taken part in a discussion among black employees who were considering filing an EEOC complaint. Heppard was called into a meeting with management and questioned about these discussions. EDSI contends that Heppard is conflating two separate events. Heppard's deposition testimony, however, does not clearly show that she was referring to two separate conversations rather than one, and the Court must draw inferences about this evidence in her favor. ECF 44, Ex. B at 64–65, 132–34, 170–71.

- Beginning in October 2010, after management became aware of a plan to file EEOC complaints, Heppard and other black employees were subject to attacks on their work performance. Heppard agreed to transfer responsibility to another employee for the database that was the subject of the performance attacks, but has testified that afterward she began to receive little new work and more undesirable tasks.

- Heppard complained of racial discrimination to then-director of the West EARN Center, Clifford Smith, who told her he also was not sure if his job was safe and that "this is how it works." ECF 44, at 12 (quoting Ex. B, at 135).

- After Heppard received a $1,000 raise as part of an employee-wide salary increase in December 2010, Heppard again asked about the status of her retroactive salary increase, but EDSI refused to provide one.
- On the day Heppard resigned in January 2011, Clifford Smith, who is black, was demoted from his position as director of West EARN and replaced with a white employee, Meredith Lang.

EDSI also argues that Heppard has failed to establish *respondeat superior* liability for constructive discharge because Heppard failed to complain to EDSI management about the events she alleges led her to quit. "[I]f a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a . . . hostile work environment [leading to constructive discharge] and failed to take prompt and adequate remedial action, the employer will be liable." *Andrews v. City of Phila.*, 895 F.2d 1469, 1486 (3d Cir. 1990). Heppard testified in her deposition that she reported her concerns to Clifford Smith approximately one week before he was demoted and she resigned, and he in essence told her that nothing could be done. EDSI has not disputed that Smith was management-level, but only contests the veracity of Heppard's testimony. ECF 45, at 7–8. To the extent EDSI is attempting to assert an *Ellerth/Faragher* affirmative defense, it has not presented any evidence that it provided "preventive or corrective opportunities" of which Heppard failed to avail herself. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, (1998). Viewing the evidence in the light most favorable to Heppard, she has demonstrated a genuine dispute of material fact on the issue of *respondeat superior*.

The Court will therefore deny summary judgment on Heppard's PHRA constructive discharge claim.

### C.  Mitigation

EDSI argues that Heppard failed to mitigate her damages because she has turned down three positions since her resignation: One that paid $21,000 per year ($7,500, or approximately 25%, less than her position at EDSI), one as a mail carrier, and one as a receptionist. "The burden falls on the defendant employer to prove a failure to mitigate by demonstrating that substantially equivalent work was available, and that the claimant did not exercise reasonable diligence to obtain it." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 89 (3d Cir. 2009). "Substantially equivalent" work "affords 'virtually identical promotional opportunities, compensation, job responsibilities, and status as the position from which the Title VII claimant has been discriminatorily terminated.'" *Id.* at 85 (quoting *Booker v. Taylor Milk Co.*, 64 F.3d 860, 866 (3d Cir.1995)). Heppard has produced sufficient evidence of differences between the duties and salaries of her position at EDSI and the positions she has been offered since 2011 that a reasonable jury could find she exercised reasonable diligence to obtain substantially equivalent work. The Court will therefore deny summary judgment on mitigation of damages.

### D.  Intentional Misrepresentation and Intentional Nondisclosure

Heppard alleged both intentional misrepresentation and intentional nondisclosure in her Complaint. ECF 1. In its Answer, EDSI did not raise a statute of limitations defense, although it raised a number of other affirmative defenses. ECF 2, at 11–12. EDSI now argues for the first time in its motion for summary judgment that Heppard's intentional misrepresentation and intentional nondisclosure claims are time-barred under Pennsylvania's two-year statute of limitations. Heppard, however, did not advance any arguments against summary judgment of

these claims in her opposition brief, but informed the Court at oral argument that she did not intend to abandon them.[2]

The Court need not base its decision, however, on these pleading and briefing imperfections because Heppard has not put forth sufficient evidence that she relied to her detriment on any promise that EDSI would award her a retroactive salary increase. *Debbs v. Chrysler Corp.*, 810 A.2d 137, 157 (Pa. Super. Ct. 2002). Although Heppard commented that she "did . . . the [QCC] job for 1 year with the expectation that I would be compensated for it eventually," there is no evidence that performing additional duties as the QCC, or taking home work during maternity leave, was detrimental to Heppard, or that she would not have done so without the promise of additional compensation. ECF 44, at 7 (quoting Ex. L). To the contrary, Heppard has introduced evidence that she benefited from performing this extra work by receiving positive performance reviews during this time period. *Ndubizu v. Drexel Univ.*, 768 F. Supp. 2d 796, 801 & n.4, 803–04 (E.D. Pa. 2011) (Brody, J.) (awarding summary judgment to employer where plaintiff obtained other career benefits from performing "extraordinarily more work than he had ever done or will ever do" and could not show his efforts were "adequately connected to" a promise of promotion). Likewise, Heppard has not submitted evidence that she has forgone alternative employment or would have left EDSI but for the promise of a retroactive raise. *Riseman v. Advanta Corp.*, 39 F. App'x 761, 767 (3d Cir. 2002) (upholding judgment as a matter of law on Pennsylvania fraud claim where plaintiff "failed to present any evidence at trial

---

[2] An affirmative defense that is not raised "by responsive pleading or by appropriate motion" is generally waived, but a court may permit a defendant to pursue an affirmative defense raised for the first time at summary judgment after considering whether the defendant demonstrated a "reasonable modicum of diligence in raising the defense" and whether "the plaintiff has been prejudiced by the delay." *Chainey v. Street*, 523 F.3d 200, 209 (3d Cir. 2008) (quoting *Charpentier v. Godsil*, 937 F.2d 859 (3d Cir. 1991)) (holding statute of limitations defense that was first raised in post-trial motions had been waived); *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 210 (3d Cir. 2001) (allowing qualified immunity defense to be raised in motion for summary judgment). As for Heppard's failure to oppose summary judgment on these claims, the Court must still determine whether summary judgment is

that he sought employment . . . that alternative employment was available or desirable," or that he would have resigned but for unfulfilled promises that he would receive a bonus).

The Court will therefore grant summary judgment on Heppard's intentional misrepresentation and intentional nondisclosure claims.

## V.     Conclusion

For the foregoing reasons, EDSI's Motion for Summary Judgment is GRANTED IN PART as to Intentional Misrepresentation (Count I) and Intentional Nondisclosure (Count II), and DENIED IN PART as to PHRA discrimination (Count IV).  Heppard's claims for Negligent Misrepresentation (Count III) and Breach of Contract (Count V) will also be dismissed.  An appropriate order follows.

O:\CIVIL 13\13-6124 heppard v. edsi dolutions\13cv6124.MSJ Memo.doc

---

warranted "as a matter of law based on the facts set forth in the [moving party's] motion." *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 171 (3d Cir. 1990).